1

2

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

| | |
|---|---|
| ROBERT ROYBAL,<br><br>                    Plaintiff,<br><br>          v.<br><br>TOPPENISH SCHOOL DISTRICT and<br>JOHN CERNA,<br><br>                    Defendants. | No.    1:14-CV-3092-SMJ<br><br><br>**ORDER ON CROSS MOTIONS**<br>**FOR SUMMARY JUDGMENT** |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

          Before the Court, with oral argument, are Defendants' Motion for Summary

Judgment, ECF No. 34, Plaintiff's Cross Motion for Summary Judgment, ECF

No. 50, and Defendants' Motion to Certify Issues to the Washington State

Supreme Court, ECF No. 61. The Court heard oral argument on June 3, 2015.

Plaintiff Robert Roybal was present, represented by Kevan Montoya. Defendants

were represented by Jerry Moberg. At the hearing, the Court denied Defendants'

Motion to Certify, denied in part and granted in part Defendants' Motion for

Summary Judgment, and granted in part and took under advisement in part

Plaintiff's Cross Motion for Summary Judgment. This order supplements and

memorializes the Court's oral rulings.

//

ORDER **-** 1

# I.   BACKGROUND

**A.   Factual Background[1]**

Plaintiff Robert Roybal had been employed as a principal by the Toppenish School District since 2005. From 2005-2010, he was employed as Principal of Valley View Elementary School. From 2010-2012, he was employed as Principal of EAGLE Alternative School. In 2012, Plaintiff was transferred to the positions of Vice Principal of Toppenish Middle School and recruiter for the Computer Academy Toppenish Schools (CATS). ECF No. 35-1. That year he received a raise in base pay from $90,296 to $92,021. For the 2013-2014 school year, Plaintiff's base pay was raised to $96,526 in accord with the School District's pay structure for elementary school principals. ECF No. 51-1, at 3.

On August 14, 2013, Plaintiff received his 2012-2013 evaluation, completed by Jeanette Ozuna. ECF No. 51-1, at 8. He did not agree with the evaluation, and believed it was improperly completed and omitted requisite information in violation of the Teacher Principal Evaluation Project (TPEP) standards. ECF No. 51-1, at 8. Plaintiff complained directly to Superintendent

---

[1] In ruling on the motions for summary judgment, the Court has considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). However, in considering the facts, the Court does not rely on conclusory allegations unsupported by factual data, *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993), nor does the Court rely upon facts contained in affidavits which directly contradict the affiants prior deposition testimony, *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999).

John Cerna about the process and possible violations of District policy because Plaintiff knew "the District was on a school improvement plan with the State, and [he] had seen it fail to follow proper procedures for years." *Id.* Plaintiff viewed Jeannette Ozuna's procedurally flawed evaluation as another example of the District's noncompliance with Washington law. *Id.* Defendant Cerna did not acknowledge any violations had occurred. *Id.* Plaintiff asked Jeannette Ozuna to reevaluate him properly, but was denied. Defendant Cerna was also unresponsive to Plaintiff's request for reevaluation pursuant to the TPEP standards. *Id.* at 11.

On August 16, 2013, Plaintiff's attorney Kevan Montoya sent Defendant Cerna a letter regarding the evaluation, and requesting specific support for Plaintiff's evaluation under WAC 392-191A-140(2). *Id.* The letter sought to "ensure [the evaluation] follows Toppenish School District (District) policy and Washington State law." *Id.* at 59. Approximately two weeks later, Defendant Cerna called Plaintiff into his office, where Human Resources Director Larry Davison was also present. Defendant Cerna criticized Plaintiff for "going outside" the District by hiring an attorney, and appeared visibly upset. *Id.* at 12. Defendant Cerna told Plaintiff he felt "blindsided" by Kevan Montoya's letter. *Id.* Plaintiff explained that he felt he had to hire an attorney in order to get an evaluation that complied with the law. Plaintiff claims Defendant Cerna responded, "[y]ou know

1   the evaluation is no good." *Id.* Subsequently, Defendant Cerna began to "freeze

2   [Plaintiff] out of administrative meetings and duties." *Id.* at 20.

3       After Plaintiff complained, Defendant Cerna asked employee Dawn Weddle

4   to "keep track of" and "start documenting" information regarding Plaintiff. ECF

5   No. 55 at 7-8. Plaintiff was later given a revised evaluation by Jeannette Ozuna,

6   but Plaintiff believed it too was not compliant with TPEP standards. Plaintiff

7   never received an evaluation for his duties related to the CATS program during

8   the 2012-2013 year. ECF No. 51-1 at 13.

9       On May 2, 2014, the District served Plaintiff a letter indicating he would be

10  reassigned for the 2014-2015 year, pursuant to RCW 28A.405.230, to a part-time

11  social studies teaching position and part-time EAGLE/CATS recruiter position.

12  *Id.* at 15. Due to the reassignment, Plaintiff's base pay was reduced from $96,526

13  to $56,599. ECF No. 35-1, at 3. On May 15, 2014, the District sent Plaintiff a

14  letter stating the reasons for the transfer. *Id.*

15      On May 22, 2014, Plaintiff and his counsel appeared at an informal meeting

16  with the School District's board of directors and Defendant Cerna to request

17  reconsideration of the reassignment. ECF No. 54 at 7. Plaintiff maintained that the

18  meeting was not the proper process for transferring him. ECF No. 51-1, at 17. At

19  the meeting, Plaintiff was given a document entitled "Basis for Robert Roybal

20  reassignment" but had no opportunity to respond to it. *Id.* At the hearing, Plaintiff

was not permitted to call witnesses. *Id.* The District issued its written response on June 2, 2014, declining Plaintiff's request. ECF No. 35-1, at 4.

On November 26, 2013, the District and the Toppenish Principals' Association signed a Memorandum of Agreement, effective through July 31, 2016, which contains various provisions pertaining to the School District's employment of principals and assistant principals. *Id.* A Memorandum of Agreement also existed from August 1, 2010, to July 31, 2013. ECF No. 51-1 at 42.

**B.  Procedural Background**

On June 13, 2014, Plaintiff filed the current lawsuit in Yakima County Superior Court, which was subsequently removed by Defendants to this Court on June 30, 2014. ECF No. 1.

On July 9, 2014, Defendants filed their first Motion for Summary Judgment. ECF No. 5. On November 5, 2014, the Court issued an order granting Defendants' request to file an amended answer and strike their previously-filed summary judgment motion. ECF No. 25.

On March 27, 2015, Defendants filed the instant Motion for Summary Judgment. ECF No. 34. Plaintiff filed a Response and Cross Motion for Summary Judgment on May 1, 2015. ECF No. 50. On June 1, 2015, Defendants filed a Motion to Certify Issues to the Washington State Supreme Court. ECF No. 61.

## II.    <u>MOTION TO CERTIFY</u>

Defendants move the Court to certify two questions of law to the Washington State Supreme Court:[2] (1) whether RCW 28A.405.230's tenure clause applies to both principals and assistant principals, and (2) whether an administrator is entitled to RCW 28A.405.230's tenure protections, when the administrator formerly served as a principal for at least three years but who was not employed as a principal at the time of transfer to a subordinate teaching position. ECF No. 61. Federal courts have "an obligation to consider whether novel state-law questions should be certified." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 294 F.3d 1085, 1086 (9th Cir. 2002). However, because current Washington law sufficiently addresses Defendants' proposed questions, no novel issue exists and certification is inappropriate.

The answer to Defendants' first question—whether RCW 28A.405.230's tenure clause applies to both principals and assistant principals—is clear. The statute provides "that in the case of principals such transfer shall be made . . . only during the first three consecutive years of employment as a principal by the school district." RCW 28A.405.230. The language of the statute as well as Washington

---

[2] Pursuant to RCW 2.60.020, a federal court may certify a pending proceeding to the Washington State Supreme Court when a question of local law has not been clearly determined.

case law[3] make plain that only principals shall not be transferred after three years. This provision of the statute does not also apply to assistant principals.

The second proposed question is also inappropriate for certification. Defendants recite the issue as whether, under RCW 28A.405.230, an assistant principal may be transferred to a subordinate teaching position when he had previously been employed as a principal for at least three consecutive years so as to obtain tenure. Such framing of the issue misses the point. Accurately stated, the question must also contemplate whether such a transfer is possible when the employee was never divested of tenure pursuant to a requisite RCW 28A.405.310 hearing.

When stated correctly, the question can be answered by existing Washington law. After obtaining tenure as a principal, the employee may not be transferred to a subordinate position under RCW 28A.405.230, regardless of his job title, unless his tenure is first divested through the proper procedure. Because there are no questions of local law requiring further clarification, Defendants' motion is denied.

///

//

//

---

[3] *See, e.g.*, *Odegaard v. Everett Sch. Dist. No. 2*, 115 Wn.2d 323, 332-333 (1990) (discussing RCW 28A.405.230's inapplicability to vice-principals).

### III.    MOTIONS FOR SUMMARY JUDGMENT

**A.    Legal Standard**

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. A fact is material if it could affect the outcome of the suit under governing law. *Id.* A dispute involving such facts is genuine when a reasonable jury could find in favor of the non-moving party. *Id.* A court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). When considering the parties' summary judgment motions, the Court (1) took as true all undisputed facts; (2) viewed all evidence and drew all justifiable inferences therefrom in the non-moving party's favor; (3) did not weigh the evidence or assess credibility; and (4) did not accept

assertions made that were flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.    Procedural Due Process**

The parties' primary point of contention is whether Plaintiff was protected as a tenured principal when he was reassigned in 2014. If so, the transfer was clearly unlawful. If not, the District acted well within its authority.

1.    Whether RCW 28A.405.230 Permits Plaintiff's Transfer

Plaintiff states he was employed as a tenured principal during the 2013-2014 school year and the District impermissibly relied on RCW 28A.405.230 to transfer him to a subordinate certificated position. Defendants argue that Plaintiff was not a tenured principle at this time, but was instead employed as an untenured assistant principal who was permissibly transferred under RCW 28A.405.230. The issue is a matter of statutory construction. The statute reads:

> Any certificated employee of a school district . . . shall be subject to transfer, at the expiration of the term of his or her employment contract, to any subordinate certificated position within the school district . . . . PROVIDED, That in the case of principals such transfer shall be made at the expiration of the contract year and only during the first three consecutive school years of employment as a principle by a school district . . .

RCW 28A.405.230. A subordinate certificated position is defined as "any administrative or nonadministrative certificated position for which the annual

compensation is less than the position currently held by the administrator." *Id.* Because the District employed Plaintiff as a principal for more than three consecutive years, RCW 28A.405.230 expressly prohibits transferring Plaintiff to a position with less annual income. *See Sneed v. Barna*, 80 Wn. App. 843, 848 (1996). However, because a District's needs may change year to year, it retains discretion to transfer tenured principals to different positions "as long as their salaries are not reduced." *Id.* When a tenured principal is transferred but maintains the same annual salary, RCW 28A.405.230 does not apply and the employee's "classification as a principal remain[s] the same after the transfer." *Id.* at 846.

The parties agree Plaintiff was employed as a principal for seven years from 2005 to 2012. Before the 2012-2013 school year, Plaintiff was transferred to Toppenish Middle School, given the title of Assistant Principal, but received a *raise* in base pay consistent with the District's annual salary tables for principals. The District therefore transferred Plaintiff in accordance with *Sneed*. The transfer did not constitute an "adverse change" that entitled Plaintiff to a hearing, nor did it implicate or dissolve Plaintiff's status as a tenured principal under RCW 28A.405.230.

Because Plaintiff retained this status, the District's decision to transfer him to a lesser-paying position before the 2014-2015 school year triggered statutory due process protections. The District could only have removed Plaintiff by

nonrenewal[4] or discharge[5], *see*, *e.g.*, *Odegaard v. Everett Sch. Dist. No. 2*, 115 Wn.2d 323, 328-329 (1990), both of which grant an opportunity to a hearing pursuant to RCW 28A.405.310 prior to any adverse action against the employee.[6]

During oral argument Defendants alleged, for the first time, that Plaintiff voluntarily waived his tenured status when he did not refuse or resist the 2012 transfer to Assistant Principal of Toppenish Middle School. Yet there is no indication, in either RCW 28A.405 or Washington case law, that such a waiver is possible. Not only was Plaintiff never informed by the District that his compliance would be construed as waiver of tenure, he could not have objected to the reassignment even had he wished to do so. Because Plaintiff's salary was not reduced, "the District merely effected [sic] a transfer which it had a right to do." *Sneed*, 80 Wn. App. at 848. The decision was the District's alone, and Plaintiff's rights "regarding notice and . . . due process" were not at issue. *Id.* Accordingly, Plaintiff was protected as a tenured principal when the District transferred him in 2014 to a subordinate certificated position.

///

//

---

[4] RCW 28A.405.210
[5] RCW 28A.405.300
[6] RCW 28A.405.245 creates additional methods for transferring principals. However, this section only applies to those first employed as principals after June 10, 2010. It is therefore inapplicable to Plaintiff.

ORDER - 11

2.   <u>Deprivation of Due Process</u>

The state may not deprive citizens of a property right without due process. U.S. CONST. amend. XIV, § 1; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). To establish a violation of procedural due process, Plaintiff must show he has been deprived of a constitutionally protected property interest through state action, and that the procedure for doing so was constitutionally inadequate. *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 974 (9th Cir. 2002). A citizen may possess constitutionally protected "property rights in continued employment." *Loudermill*, 470 U.S. at 539. Protected property interests are "created . . . and defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 538 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A state statute "clearly creates such an interest" where employees cannot be dismissed except for misfeasance, malfeasance, or nonfeasance in office. *Id.* at 538-539. The unique protections afforded tenured principals create such an interest.

A tenured principal "may be removed from his or her job only by nonrenewal or discharge." *Odegaard v. Everett Sch. Dist. No. 2*, 115 Wn.2d 323, 328-329 (1990). Both nonrenewal and discharge, codified as RCW 28A.405.210 and .300 respectively, grant the employee an opportunity to receive a hearing to determine whether there is probable cause for discharge, nonrenewal, or adverse

effect in contract status.[7] "Thus, [either statute] creates a property right in continued public employment for those who fall under the statute." *Giedra v. Mt. Adams Sch. Dist. No. 209*, 126 Wn. App. 840, 846 (2005). Therefore, transferring Plaintiff to a subordinate certificated position without a probable cause hearing, in violation of *Odegaard*, deprived him of a constitutionally protected property interest in continued employment at his previous salary.

Finally, though Plaintiff was deprived of a constitutionally protected property interest as a result of state action, the question remains whether Plaintiff was nonetheless afforded adequate process. In this case, the procedural insufficiency of the District's transfer is evident. RCW 28A.405.300 "requires a pretermination hearing before a principal is adversely affected in his contract status." *Bellevue Public Sch. Dist. No. 405 v. Benson*, 41 Wn. App. 730, 734 (1985). The adverse action must be based on probable cause. The statute provides:

> [I]n the event cause for discharge or other adverse action is not established by a preponderance of the evidence at the hearing, such employee shall not be discharged or otherwise adversely affected in his or her contract status . . . .

RCW 28A.405.300. As Plaintiff was not given a hearing, the District could not have established the necessary cause to adversely affect his contract status. Defendants acknowledged the same at oral argument, conceding that if Plaintiff

---

[7] RCW 28A.405.310 establishes the procedure for probable cause hearings.

was a tenured principal at the time of his transfer, then his due process rights were not observed.

In denying Plaintiff the requisite hearing before depriving him of his property interest in continued employment, the District infringed his statutory and constitutional due process rights in violation of RCW 28A.405.310 and 42 U.S.C. § 1983. Accordingly, Defendants' Motion for Summary Judgment is denied, and Plaintiff's Cross Motion for Summary Judgment is granted on this issue.

## C.      First Amendment Retaliation

Plaintiff alleges he was transferred to a lesser-paying position as retaliation for exercising his First Amendment rights when he complained to Defendant Cerna that the District's evaluation process was flawed. Defendants move for summary judgment believing that Plaintiff's First Amendment rights were not violated.

Whether a public employee's speech is constitutionally protected is "determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-148 (1983). The Plaintiff bears the burden of showing (1) the speech addressed an issue of public concern, (2) the speech was spoken in the capacity of a private citizen and not a public employee, and (3) the state took an adverse employment action and the speech

was a "substantial or motivating" factor in the adverse action. *Eng v. Cooley*, 552 F.3d 1062, 1070-1071 (9th Cir. 2009).

The state then bears the burden of showing that under the balancing test established in *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563 (1968), the state's legitimate administrative interests outweigh the employee's First Amendment rights. If the state fails the *Pickering* balancing test, it can nonetheless avoid liability by demonstrating it would have reached the same adverse employment decision in the absence of the employee's protected conduct. *Eng*, 552 F.3d at 1071-1072.

The facts advanced by both parties, viewed in a light most favorable to Plaintiff, would permit a reasonable trier of fact to determine Plaintiff has satisfied all three elements of meeting his burden. Thus, for the purpose of surviving a motion for summary judgment, Plaintiff's burden has been met.

Although Defendants can avoid liability by proving either that under the *Pickering* balancing test the state's legitimate administrative interests outweigh the Plaintiff's First Amendment rights, or that it would have reached the same adverse employment decision in the absence of the Plaintiff's protected conduct, they have done neither at this time.

///

//

1.    Issue of Public Concern

Speech involves a matter of public concern when it can fairly be said to relate to "any matter of political, social, or other concern to the community," not "'individual personnel disputes or grievances' that would be of 'no relevance to the public's evaluation of the performance of governmental agencies.'" *Eng*, 552 F.3d at 1070 (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)). Courts "have defined the 'scope of the public concern element . . . broadly,' and adopted a 'liberal construction of what in issue of public concern is under the First Amendment.'" *Desrochers v. City of San Bernadino*, 572 F.3d 703, 709-710 (9th Cir. 2009) (citations omitted). Plaintiff sufficiently proves this element to survive summary judgment.

"Speech that is 'relevan[t] to the public's evaluation of the performance of governmental agencies'" addresses matters of public concern. *Eng*, 552 F.3d at 1073 (quoting *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006)). Here, Plaintiff's speech involved criticizing allegedly institutionalized procedural flaws in the evaluation process for the District's employees. The heart of Plaintiff's allegation is that "[he] had seen [the District] fail to follow proper procedures for years." ECF No. 51-1 at 8. Criticism that relates to the functioning of the government is a matter of inherent public concern. *See Johnson v. Multnomah Cnty., Or.*, 48 F.3d

420, 425 (9th Cir. 1995). It would therefore be inappropriate at this time to find Plaintiff's speech did not address an issue of public concern as a matter of law.

### 2.    Spoken as Private Citizen or Public Employee

Statements are made in the speaker's capacity as citizen "if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Eng*, 552 F.3d at 1071 (quoting *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008)). Here, Plaintiff "had no official duty to complain" about the evaluation process, but chose to go directly to the Superintendent to discuss institutional flaws he perceived with the District's procedures. *Id.* at 1073.

In addition, in airing his objections to the process, Plaintiff hired attorney Kevan Montoya to communicate with the District and Defendant Cerna on his behalf to "ensure [the evaluation] follows Toppenish School District (District) policy and Washington State law." ECF No. 51-1 at 59. Mr. Montoya's "words were [Plaintiff's] words as far as the first Amendment is concerned." *Eng*, 552 F.3d at 1070. As such, and assuming the truth of the facts as alleged by the non-moving party, the Court cannot say as a matter of law that Plaintiff was speaking in his capacity as a private employee.

### 3.    "Substantial or Motivating" Factor

Whether Plaintiff's speech was a "substantial or motivating" in the adverse employment action "is purely a question of fact." *Eng*, 552 F.3d at 1071. There

are three ways in which Plaintiff can show that retaliation was a substantial or motivating factor behind an adverse employment action. *Coszalter*, 320 F.3d at 977. First, Plaintiff can introduce evidence regarding "'the proximity in time between the protected action and the allegedly retaliatory employment decision,'" from which a jury could logically infer the adverse employment action was retaliation. *Id.* (quoting *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 1988)). Second, Plaintiff can present evidence that "'his employer expressed opposition to his speech, either to him or others.'" *Id.* (quoting *Keyser*, 265 F.3d at 751). Third, Plaintiff can present evidence that "'his employer's proffered explanations for the adverse employment action were false and pre-textual.'" *Id.* (quoting *Keyser*, 265 F.3d at 752). At a minimum, Plaintiff has pled sufficient facts to permit a reasonable trier of fact to infer a retaliatory intent under either of the first two theories.

There is sufficient proximity in time between the protected action and the allegedly retaliatory employment decision. Depending on the circumstances, "an eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory." *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) (citing *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir. 1988)). An inference of retaliatory intent strengthens as the temporal gap between the protected conduct and the employment decision shrinks.

*Id.* In Plaintiff's case, the temporal gap is approximately nine months. On August 16, 2013, Plaintiff's attorney sent Defendant Cerna a letter regarding the evaluation, and seeking to ensure the evaluation complied with Toppenish School District policy and Washington State law. ECF No. 51-1 at 59. On May 2, 2014, the District served Plaintiff a letter indicating he would be reassigned for the 2014-2015 year, pursuant to RCW 28A.405.230. *Id.* at 15. A nine-month gap in temporal proximity can sufficiently support the inference that Plaintiff's speech was a "substantial or motivating" factor in the adverse employment action.

Plaintiff has also pled facts that his employer expressed opposition to his speech, supporting an inference of retaliatory intent under *Coszalter*'s second method of proof. Plaintiff alleges Defendant Cerna criticized him for "going outside" the District by hiring an attorney, and appeared visibly upset when they spoke. ECF No. 51 at 12. Defendant Cerna told Plaintiff he felt "blindsided" by Plaintiff's letter suggesting institutional violations. *Id.* After Plaintiff stated he believed the District was not in compliance with Washington law, Defendant Cerna asked employee Dawn Weddle to "keep track of" and "start documenting" information regarding Plaintiff. ECF No. 55 at 7-8. Therefore, at this stage, the record would permit a jury to infer Plaintiff's speech was a "substantial or motivating" factor in the adverse employment action.

Accordingly, for purposes of surviving a motion for summary judgment, Plaintiff has met each of his three burdens of proof. Because Defendants have not established evidence in support of either responsive burden of proof, Plaintiff passes the First Amendment retaliation test.

**D.    Qualified Immunity**

Defendant Cerna maintains he is entitled to qualified immunity from personal liability with respect to both Plaintiff's deprivation of due process claim and First Amendment retaliation claims. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As discussed above, Plaintiff's §1983 due process rights were violated, and his First Amendment retaliation claim survives summary judgment. Thus, the only question remaining for the Court at this stage is whether those rights were clearly established.

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Officials must have "fair warning" their conduct violates Plaintiff's rights. *Hope v. Pelzer*, 536 U.S.

730, 731 (2002). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S.Ct. at 2083. A qualified immunity analysis "'focuses on *the objective legal reasonableness of an official's acts*.'" *Eng*, 552 F.3d at 1068 (emphasis in the original) (quoting *Harlow*, 457 U.S. at 819). The Defendant's subjective understanding of the constitutionality of his conduct is irrelevant. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1073 (9th Cir. 2012).

    1.   <u>Deprivation of Due Process Under § 1983</u>

Defendant Cerna cannot prove as a matter of law that Plaintiff's due process rights were not clearly established. Defendant Cerna knew that (1) Plaintiff had attained tenured status after the 2007-2008 school year, shielding him from transfer to a subordinate certificated pursuant to RCW 28A.405.230; and (2) Plaintiff had never been divested of his tenured status by any statutorily delineated process. Based on these facts, there are only two offered possible explanations why Plaintiff's tenure rights were not "clearly established" at the time of his transfer. The Court will address each in turn.

First, Defendants allege that after Plaintiff's 2012 transfer to Assistant Principal of Toppenish Middle School he became an assistant principal for *all* intents and purposes, specifically with respect to tenure eligibility. However, the notion that Plaintiff's tenured status had evaporated because he began performing

1   the duties of an assistant principal is belied by his escalating salary. Following that

2   transfer, Plaintiff received a raise in base pay from $90,296 to $92,021. ECF No.

3   51-1, at 3. For the subsequent school year, Plaintiff's base pay was again raised to

4   $96,526. *Id.* Both raises were in accord with the School District's pay structure for

5   principals, not assistant principals. *Id.* Defendant Cerna's asserted belief that

6   Plaintiff was not a principal at the time of his transfer in 2014 is thus disputed at

7   best.

8          Washington courts have also squarely addressed this issue. In *Sneed*, the

9   court explained "the District has the right to transfer tenured principals as long as

10  their salaries are not reduced." 80 Wn. App. At  848. Transferring tenured

11  principals in this way "allows the employer to match the skills of the individual

12  administrator with the District's needs, either or both of which may change from

13  year to year," without jeopardizing or implicating the employee's tenure. *Id.*

14  Accordingly, Defendant Cerna's first basis for disputing whether Plaintiff's rights

15  were clearly established fails for lacking the requisite "objective legal

16  reasonableness." *Harlow*, 457 U.S. at 819.

17         Defendant Cerna's second possible basis for qualified immunity is that

18  Plaintiff voluntarily waived his tenured status by not refusing or resisting the 2012

19  transfer to Assistant Principal of Toppenish Middle School. Yet Defendant Cerna

20  has not provided any example of principals voluntarily waiving tenure protections,

nor is there any indication, in either Chapter 28A.405 RCW or Washington case law, that such a waiver is possible.

A waiver is an "'intentional relinquishment or abandonment of a known right or privilege.'" *State v. Frawley*, 181 Wn.2d 452, 461 (2014) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Courts "indulge every reasonable presumption against waiver of fundamental rights." *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207 (1984) (citing *Glasser v. United States*, 315 U.S. 60, 62 (1942)). In general, the waiver of a constitutional right must be made "knowingly, voluntarily, and intelligently." *State v. Thomas*, 128 Wn.2d 553, 558 (1996). Plaintiff's acceptance of his transfer cannot be said to meet this high standard.

The District never informed Plaintiff that his compliance would be construed as waiver of tenure. Moreover, Plaintiff could not have objected to the reassignment even had he wished to do so. Because Plaintiff's salary was not reduced, "the District merely effected [sic] a transfer which it had a right to do." *Sneed*, 80 Wn. App. at 848. The decision was the District's alone, and Plaintiff's rights "regarding notice and . . . due process" were not at issue. *Id.* At no time did Plaintiff "knowingly, voluntarily, and intelligently" waive his protective tenured status. *Thomas*, 128 Wn.2d at 558.

Considering the significant degree of case law defining Plaintiff's rights, and construing all facts and inferences in favor of the nonmoving party, the Court

finds Defendant Cerna had "fair warning" that his actions were unlawful. *Pelzer*, at 731. At a minimum, Defendant Cerna is not entitled to qualified immunity at this stage on the due process claim.

### 2.    First Amendment Retaliation

Defendant Cerna cannot prove as a matter of law that Plaintiff's speech rights were not clearly established. Whether Plaintiff (1) spoke on an issue of public concern, and (2) in the capacity of a private citizen, has survived Defendants' Motion for Summary Judgment. Where Plaintiff "'comment[ed] upon matters of public concern' 'as a citizen' and *not* pursuant to his job responsibilities, his speech *was* protected by the First Amendment—that rule ha[s] long been the law of the land." *Eng*, 552 F.3d at 1075 (emphasis in the original) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284 (1977)).

Defendant Cerna contends there is no clearly established right to criticize a school district's evaluation process. The contention is misplaced. Although there may not be "a case directly on point," existing precedent has "placed the . . . question beyond debate." *Ashcroft*, 131 S.Ct. at 2083. Speech relating to the functioning of government is inherently of public concern, *Eng*, 552 F.3d at 1072, and public employees "have a First Amendment right to be free from retaliation for commenting on matters of public concern, even where the protected comments

are critical of their employers." *Eng*, 552 F.3d at 1065 (citing *Pickering*, 391 U.S. 563, 571).

Thus, assuming Plaintiff's version of the facts is true, he had a clearly established right to comment on the District's failure to properly evaluate its employees and comply with state law. Accordingly, Defendant Cerna's claim of qualified immunity on this issue is denied.

**E.    Writ of Mandamus**

Plaintiff requests a writ of mandamus under RCW 7.16.160, ordering the District to reinstate Plaintiff to his pay level for the 2013-2014 year. RCW 7.16.160 provides:

> [A writ of mandamus] may be issued by any court, except a district or municipal court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board or person.

A party seeking a writ of mandamus must show that "(1) the party subject to the writ has a clear duty to act; (2) the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law; and (3) the petitioner is beneficially interested." *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 588-589 (2010). Because Plaintiff's request for a writ of mandamus is fatally flawed in various ways, it is denied.

First, Plaintiff cannot meet the *Serko* standard. In this case, Plaintiff is currently exercising his "plain, speedy, and adequate remedy in the ordinary course of law" by bringing the instant suit against Defendants for violation of 42 U.S.C. § 1983. Broadly, "the remedy issue turns on whether the duty the plaintiff seeks to enforce 'cannot be directly enforced' by any means other than mandamus." *Eugster v. City of Spokane*, 118 Wn. App. 383, 414 (2003) (quoting *Bd. of Liquidation v. McComb*, 92 U.S. 531, 536 (1875)). Because other means exist for Plaintiff to enforce his due process rights, issuing a writ of mandamus would be inappropriate.

Second, even had Plaintiff met the *Serko* standard, this Court lacks authority to issue a writ under RCW 7.16.160. The lawsuit was removed to this Court pursuant to 28 U.S.C. § 1331 for resolution of a federal question. This Court is not sitting in diversity jurisdiction, so it is not applying "state substantive law and federal procedural law" under the *Erie* doctrine. *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996). Rather, where a litigant alleges a violation of § 1983, the extent and nature of the legal consequences of such violation are "federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted." *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176 (1942). In this case, neither the statute nor federal policy empower the Court to issue writs pursuant to Washington state law.

**F.    Wrongful Wage Withholding**

Defendants move to dismiss Plaintiff's claim for double damages for "willfully and with intent to deprive" withholding wages due under any statute, ordinance, or contract, in violation of RCW 49.52.050 and .070[8]. Plaintiff contends Defendants wrongfully withheld wages totaling the disparity between his current salary and the salary he would have received as a principal.

The critical determination under RCW 49.52.070 is whether the employer's failure to pay is "willful." *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159 (1998). "[W]illfulness is found where 'the employer's refusal to pay [is] volitional . . . .'" *Morgan v. Kingen*, 166 Wn.2d 526, 534 (2009) (quoting *Schilling*, 136 Wn.2d at 159-160). Where an employer fails to pay wages owed, there are two instances that negate a finding of willfulness: (1) "the employer was careless or erred in failing to pay," or (2) "a 'bona fide' dispute existed between the employer and employee regarding the payment of wages." *Schilling*, 136 Wn.2d at 160. In this case, Defendants willfully failed to pay Plaintiff wages owed. Accordingly, to succeed on summary judgment, Defendants must demonstrate they were "careless or erred," or that a bona fide dispute caused the failure to pay.

First, Defendants cannot show they were careless or erred in nonpayment to Plaintiff. The concept of carelessness or inadvertence "suggests errors in

---

[8] RCW 49.52.050 enumerates prohibited conduct. Section .070 provides for double damages for willfully withholding wages in violation of RCW 49.52.050(2).

ORDER - 27

bookkeeping or other conduct of an accidental character." *Schilling*, 136 Wn.2d at 161. Defendants' failure to pay Plaintiff as a principal is far from an "error in bookkeeping." Instead, each of Defendants' decisions regarding Plaintiff's transfer and consequent reduction in pay was deliberate.

Defendants can nonetheless prevail if they establish the existence of a bona fide dispute, "i.e., a 'fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid." *Schilling*, 136 Wn.2d at 161. Examples of bona fide disputes include whether payment of a bonus over a ten-year period can ripen into an implied contract, *Simon v. Riblet Tramway Co.*, 8 Wn. App. 289 (1973); if vacation leave continued accruing while employees where on disability leave, *Cannon v. City of Moses Lake*, 35 Wn. App. 120 (1983); or if a university was contractually obligated to refrain from withholding social security from certain employees' gross wages, *Pope v. Univ. of Wash*, 121 Wn.2d 479 (1993). Whether a bona fide dispute exists is a fact-intensive inquiry.

In this case, Defendants have not established that a bona fide dispute existed as a matter of law, entitling them to summary judgment. Rather, a reasonable jury could find that Defendants did not act "in subjective good faith [nor] had objectively reasonable grounds for believing [the] conduct did not violate federal law," when transferring Plaintiff to a subordinate certificated

teaching position in disregard of his tenured status. *Monohan v. Emerald Performance Materials, LLC*, 705 F. Supp. 2d 1206, 1219 (W.D. Wash. 2010). Accordingly, Defendants' motion for summary judgment on this issue is denied.

**G.   Breach of Contract**

Plaintiff moves for summary judgment that the District is liable for breach of contract because it failed to evaluate him by the terms of the November 26, 2013 Memorandum of Agreement (MOA)[9]. The District moves for summary judgment that it is not liable to Plaintiff for breach of contract, whether or not the terms of the MOA were followed.

On November 26, 2013, the District and the Toppenish Principals' Association signed a Memorandum of Agreement, effective through July 31, 2016, which contains various provisions pertaining to the District's employment of principals and assistant principals. ECF No. 35-1. The section at issue, paragraph 10, states:

> All evaluations of principals and assistant principals shall be completed (by the Superintendent of Designee) in accordance the [sic] AWSP Leadership Frameworks, District Policy, and current Washington State statues [sic]. (See Appendix 2-RCW 28A.405.100 [sic][.]

---

[9] The document is interchangeably referred to as "Memorandum of Agreement" (MOA) and "Memorandum of Understanding" (MOU).

ECF No. 35-1. Plaintiff claims the District is in breach of contract for failing to evaluate him in compliance with this section of the MOA. To be clear, Plaintiff does not allege the existence of an implied cause of action under any state statute[10] incorporated into the MOA by reference. Instead, Plaintiff's purported cause of action arises solely from within the four corners of the MOA. That is, "the District promised to follow the MOA," but did not do so. ECF No. 50 at 35-36. Notwithstanding potential procedural deficiencies in the District's evaluation process, Plaintiff's claim fails for failing to establish all requisite elements of breach of contract.

A breach of contract is actionable "only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Northwest Indep. Forest Mfrs. v. Dept. of Labor & Indus.*, 78 Wn. App. 707, 712 (1995) (citing *Larson v. Union Inv. & Loan Co.*, 168 Wash. 5 (1932)). In this case, the plain language of the MOA demonstrates the District did not breach its duty to Plaintiff by failing to evaluate him as outlined in paragraph 10. The MOA anticipates the possibility that its provisions will not be observed and articulates a remedy: renegotiation. The third sentence of the agreement states "[i]f provisions of the MOU are not adhered to, this will open the MOU for negotiation." ECF No. 35-1 at 26. Accordingly, the District's duty to the Principals' Association is

---

[10] Even were Plaintiff to assert an implied cause of action, he has not likely met the test for doing so. *See, e.g.*, *Bennett v. Hardy*, 113 Wn.2d 912, 920-921 (1990).

broader and more relaxed than Plaintiff proposes. The District has a duty to adhere to the MOA's provisions, and to renegotiate if it does not do so.

Finally, a canon of contract interpretation, *expressio unius est exclusion alterius*, lends further support to the District's position. It states that "to express or include one thing implies the exclusion of the other, or of the alternative." BLACK'S LAW DICTIONARY (9th ed. 2009). "The lack of an express term with the inclusion of other similar terms is evidence of the drafters' intent." *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 251 (2014). Here, the MOA expressly acknowledges the possibility of noncompliance and it provides a single remedial procedure: renegotiation. Doing so indicates the drafting parties did not intend for noncompliance to result in any other outcome, including breach of contract.

Accordingly, Plaintiff's Motion for Summary Judgment is denied, and the District's Motion for Summary judgment is granted on this issue.

## IV.   <u>CONCLUSION</u>

Therefore, the Court denies Defendants' Motion to Certify, grants in part and denies in part Defendants' Motion for Summary Judgment, and grants in part and denies in part Plaintiff's Cross Motion for Summary Judgment.

Accordingly, **IT IS HEREBY ORDERED**:

1.   Defendants' Motion to Certify Issues to the Washington State Supreme Court, **ECF No. 61**, is **DENIED**.

2.    Defendants' Motion for Summary Judgment, **ECF No. 34**, is **GRANTED IN PART** (as to writ of mandamus and breach of contract) and **DENIED IN PART** (as to violation of due process under 42 U.S.C. § 1983, violation of First Amendment rights, and Wrongful Wage Withholding).

3.    Plaintiff's Cross Motion for Summary Judgment, **ECF No. 50**, is **GRANTED IN PART** (as to violation of due process under 42 U.S.C. § 1983), and **DENIED IN PART** (as to writ of mandamus, breach of contract).

   **IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

   **DATED** this 24th day of June 2015.

   _____
   SALVADOR MENDOZA, JR.
   United States District Judge